May it please the court, good morning. My name is Rita Latsanova. I'm representing Neighbors for Notice. My partner, Maren Norton, is here with me. Can you speak up a little? As well as Peter Krause, the managing agent of Neighbors for Notice, as well as many of the neighbors. I would like to save three minutes of my time for rebuttal. All right, watch your time please. Yes, this case presents a very important issue of federal constitutional law. Whether by omitting all public notice and denying neighbors an opportunity to pursue any remedy available under state law, the Seattle Department of Planning and Development deprived them of a property interest protected under due process. Or, as the Supreme Court framed it in the Logan case, the issue here is whether a LUPA, cause of action, created by Washington legislature, is property. I have to ask you a question about this. Just, you know, obviously, I'll start with it's disturbing on some level that the people don't hear anything about it and then the next thing they know this thing is up and they don't have a chance and the statute of limitations is run on LUPA and all of that. But, the flip side of it is that when you ask to create a property interest, when it deals with zoning, you know, I'm seeing Pandora's box just flying open. So, I'm trying to, under LUPA, generally the property owner would be, they would be contesting under LUPA. Would you actually have standing under that? Yes, absolutely. Washington courts have interpreted LUPA to give standing to neighbors. Yes. So, the city wouldn't get up here and deny that you would have had standing? No, and they admitted it in the district court and there's the first part of the district court's decision concludes that they're standing and the city did not your position on whether it contains any discretionary criteria and also tell me what in your view has been the city's position on whether it's a discretionary or non-discretionary. Starting with the city, the last question, I believe the city's, excuse me, I believe the city's position is that it is a non-discretionary decision that they have to grant an exemption in some cases, including in this case when the developer shows a historic map, for example. It is our position that it is not a discretionary decision because there are specific criteria in the Seattle Municipal Code. So, this exemption as it existed at the time provided that, and this is a quote, the lot must be established as a separate building site prior to 1957 by deed, contract of sale, mortgage, property tax segregation, planting or building permit. So, it's not enough to have a historic tax lot. That doesn't do it. They have to show that the lot was established as a separate building site. So, you're saying it's non-discretionary? Absolutely. There are standards and that's what makes it property. That's the current view in the Ninth Circuit. But if they say it's non-discretionary also, you said it's their view that it's also non-discretionary? Then why are they saying it doesn't create a property right? Well, I think they use the word, they can speak for themselves. But what they said before is they took the position that they had to grant this exemption, which doesn't follow from the statute. The statute says you have to establish that this lot existed not only as a separate tax lot, which is an anachronism. So, if it's discretionary, do you concede that it would not be a property right? Yes. Yes. If it was a discretionary decision that the Seattle DPD was free to grant or deny, then it would be just like Roth. It would be just like Olin. There would be nothing that the procedure would attach to. But this is not. This is an adjudicatory decision. So, I think that it's important to go to cases which summarize the current view of the Supreme Court and the majority of circuits about what is really property for due process. Is the building still up? It's very much up. It's three stories tall. It's looming into everybody's backyard. I'm just curious, why did the neighbors not notice the property was under construction? I mean, it was done and completed and sold before the suit was brought. I mean, the neighbors had to know that, hey, there's a building going up here. Well, but the time to appeal on the looper is 21 days after the decision to grant the exception. The builder got the exception, waited 21 days, brought a bulldozer on day 22 or day 23, their looper rights gone. But the neighbors could have tried to get an injunction, perhaps? Absolutely not. Because the looper rights are lost. That's the injustice here. That's the fundamental unfairness. On day 22, it's too late. Basically, what the neighbors want to say, they want all lots to have 5,000 square feet, right, which is the zoning. Not necessarily. No. Well, there are three potential property rights at issue here. One is the cause of action on the looper itself. That's pure Logan. That's just like Logan. Logan says the cause of action is property. They had a cause of action that they were prevented from bringing. That is property under Logan. Yeah, but the case of Olam has limited that, right? No, I don't think so. First of all, Olam is not even a property case. It's a liberty case. Olam is a case of prison transfer. A prisoner is being transferred from a federal prison in Hawaii, which is his home state, to the state of California. And he didn't like that. So he protested and wanted a hearing. And the Supreme Court said no, because he has no right to serve his sentence. It's discretionary whether they transferred or not. Absolutely. Logan was not a property case. It was not a land case either. It was an employment case as well. It's not correct. It's not a land case. It's an employment case. But Logan's holding is not limited to employment cases. Logan said that, and this is a quote, the hallmark of property is an individual entitlement grounded in state law, which cannot be removed except for cause. It's not limited to employment cases. And then it explained further what entitlement means. Entitlement does not mean a guaranteed result. It doesn't mean Logan goes to a hearing and gets his job back. No, he has to prove that he was terminated because of his disability, not because of some other reason. So the entitlement was the cause of action itself. The right to go to a hearing and to prove that his employer violated state law and acted on Logan. You're just saying the process you were due was notice so that you could bring a lawsuit under the vehicle or you could make a challenge under the vehicle that's allowed under Washington law. It's not the process for process's sake, as in, for example, Roth. Roth was an untenured professor. He had nothing to complain about. He could be terminated for any reason. The university did not have to renew his contract. The university could do whatever it wanted. And so if he had a hearing, there would be no standards to apply. And that's what makes it not property. In this case, what makes it property is because this is a type of decision like in Logan. There are criteria. They cannot just say this. You can build a second house in the backyard. They have to prove. Okay, so if it's a non-discretionary, the historical exemption is non-discretionary, had you had noticed, you could have filed under LUPA. Yes. And then what you could have shown that they were wrong as a matter of law. Absolutely. When they granted the exemption. Yes. And also there, I think it's important to remember that in this case, there's not just one land use decision, but more than one, right? First, they decide this is an exemption that they grant. Second, they decide, but of course the exemption only gives them a little triangle, a thousand square feet. That's not buildable. Then they convert the triangle into a rectangle and have a 1000 square foot rectangle that they conclude. But that's discretionary, right? No, no, no, no. None of it is discretionary. Here's the law. So the first decision is not discretionary because the exemption decision is not discretionary because the law has to be established as a separate building site. And that's in the municipal code itself. And it was since then interpreted by Washington Court of Appeals in RL Associates, which is a very that was unlawful because there are criteria. Now the lot boundary adjustment was also unlawful because Washington law provides that no building permit shall be issued for any lot divided in violation of a subdivision act or local regulations. And that is in RCW 5817.210. And also the Seattle municipal code itself prohibits using lot boundary adjustments to parcel, site, or division. And again, the case about that is RL Associates. And the citation is Seattle municipal code 23-28030A1. So summarizing what the code provides is you cannot use a lot boundary adjustment to create two units of anything, right? If there was, for example, two tax lots but only one site, you still cannot use a lot boundary adjustment to create two sites because before there was only one. And in this case, there was only one site. Even if there were two historic lots, there was only one site because it could never have been a site. It was a triangle. It was a thousand square feet. It could never have been considered a building site in 1957. In 1957 and before, people did not build in Seattle on little triangles that are a thousand square feet. Council, may I ask you why we shouldn't follow the rationale of the Second Circuit in Fusco versus State of Connecticut? That appears to be an analogous circumstance. In that case, the Second Circuit said that the statute was a procedural statute as opposed to granting a substantive right. Why should we not find that case persuasive? Because, first of all, the Second Circuit has its own definition of what is property for the purposes of due process protection. And it's a much narrower definition than the Ninth Circuit has adopted, particularly in Harris. That's a Ninth Circuit case that's really critical here. And second of all, what Fusco says that what the Fuscos complained about was the process itself, was the procedure itself. There's nothing that the procedure could attach to. And in this case, we certainly pleaded and we certainly proved that if neighbors had gone to the hearing, they would have shown, or if they had been allowed to exercise their looper right, they would have shown that each of these decisions is illegal. So it's not procedure for the purpose of procedure as in Roth, for example, or Olim. This is an entryway into the court system, the only entryway in this case, that would allow them to show that the decisions that affect their property rights were unlawful. There was no such theme in Fusco at all. And moreover, there's a footnote, footnote five, I think, in Fusco that talks about, there were some unique facts there. Fusco's, what was, what triggered Fusco's appeal rights was the decision itself, not the notice of a hearing. Also in Fusco, notice was once but twice. They actually had notice of the hearing, but they didn't see it because it was noticed by publication. In this case, there's no notice at all. Nobody knows about this. When the bulldozer comes and the first notice, neighbors get that something's going on next door, all their access to state remedies is cut off completely. I see I have a minute and a half. I'll save that. Thank you. Good morning, your honors. My name is Patrick Downs. I represent the city of Seattle. What the plaintiff is asking this court to do is constitutionalize a requirement that administrative permits are subject to notice. I realize that, but it's really, it's really kind of bothersome here. I mean, well, it bothers me that they didn't get any notice. I mean, I know someone behind me wants to, wanted to build something with a five foot variance, and all the neighbors got, you know, a notice in the area that you could object if you wanted to and go to a meeting before they put the whole thing up. But here, they don't get any notice, and would you concede that they could have under LUPA? Would they have standing there? Yes, your honor. They are next door neighbors, and they would have standing, but they received all the notice that's required under the law. Which was none? Pardon me? Which was none? That's right, your honor. RCW 3670B-142, excuse me, 3670B-140-2, that says that local jurisdictions can determine what notice it will give to the public for administrative decisions, and that's exactly what these are. The lot, the lot boundary adjustment is an administrative decision that is, is not subject to notice. But what if, what if they passed something that said that they could take your property for eminent domain without giving you notice, and then the bulldozers were out? Would that be constitutional? No, it wouldn't, your honor. But our state... Why wouldn't that be an administrative decision that you could enact without notice? Could you repeat the question, your honor? Why wouldn't that be an administrative decision that would fall under your definition of requiring no notice? And getting a bulldozer out or... No, just the decision to make, yeah, decision to take property by eminent domain. What is different about that that would make it not an administrative decision that comes within your argument? Well, first of all, the city did not take any aspect of property from the neighbors. That wasn't the question. The question was, if the city decided to exercise its right of eminent domain, why wouldn't that be an administrative decision? The exercise of eminent domain by the city is a legislative action. It's the city council that engages in that, and that itself will require notice. It's going to require a whole panoply of notifying the property owner that you're going to condemn that property. I don't think that's... Why is that a legislative decision, and this decision was an administrative decision? Why... Do they have to pass an ordinance to do eminent domain? Yes, they do. That's how you acquire property in this state. It just seems that it's just because you say no notice is required, does that end our inquiry? Well... I mean, so that you could do... And my understanding is that you conceded this is a non-discretionary statute, right? The code provisions that are in play here to establish the lot, to adjust the lot, and to issue a building permit are all administrative permits, yes, and no notice is required under state statute. But no, no, no. Is it a non-discretionary decision? It is a non-discretionary. They're all non-discretionary decisions. So if it's a non-discretionary decision, then if you're wrong, what... As a matter of law, if you're wrong as a matter of law, how can someone challenge that? It's LUPA, right? Well, it's LUPA. But then if there's no notice requirement for LUPA, how can you exercise... And I mean, it sounds like here, too, that the developer waited over, what, 22 days, and then it was too late. So you got to understand that when you come to a court and you say that you have no... That there's no remedy for a wrong, and it's non-discretionary, and so as a matter of law, the city can make a legal error, and there's nothing that people can do, and that you're not required to give any notice, we're sort of, you know, it's concerning. Well, I think Durland v. San Juan County helps address this issue. And in that case, Durland claimed that he had a protected property interest in LUPA and didn't get any notice. And what our state Supreme Court said is that we're going to look to the zoning code and determine whether or not the zoning code sufficiently constrains the decision-maker with respect to the third party. And in Durland, the next door party, just like these neighbors, complained that this project's going to impact my property, and I didn't receive notice, and therefore I'm entitled to the access LUPA as a matter of right. And our court said, no, we're going to go look at the zoning code, and we're going to determine how that code constrains the decision-maker, significantly constrains the decision-maker or not, and found that there was nothing in that zoning code that constrained the decision-makers with respect to making those decisions and the impact on the third party, and therefore... What are those two cases that you're citing? It's Durland v. San Juan County. Durland? Durland, D-U-R-L-I-N, and it controls... Was it discretionary or was it non-discretionary? It was non-discretionary. It was a building permit. It was the same specie of permit that we have here. Both a building permit was issued here, the LBA, lot boundary adjustment, and the lot determination are all administrative. So same type and specie of permit. Now, I want to contrast that, Your Honors, with Ash v. Bloomquist, and it was asking the same question. What does the zoning code do, and how does it significantly constrain decision-makers so that the neighbor has a protected property interest, again, under LUPA? And in Ash v. Bloomquist, what our Court of Appeals said is that in the zoning code, because that provision of the zoning code, that county code said if you're building between 28 feet and 35 feet, and it impacts the view of the neighbor, that neighbor has a protected property right under the zoning code. Our facts are like Derlin. There isn't a thing in our zoning code that the neighbors can point to. There's not a thing there that they can point to that would say there's something that significantly constrains DPD as a decision-maker that would give us a property right under our state Supreme Court's decision in Derlin. Did you cite Derlin in your authority, because Derlin was decided after the briefing occurred? Well, that's your counsel's, that the boundary adjustment would not properly allow two building sites. Well, that's absolutely wrong, Your Honor, because what you start out looking at is, did this lot qualify as an exemption from the SF 5,000 square foot zoning standards? You start there. And it did because, for a couple of reasons. One, it was platted, I think in the 19, well, probably in the late 1800s, it was platted as a separate lot. Beyond that, it was a separate tax parcel from 1939 to 1971. So we assume it fits one of those six exemptions. Okay, but what about then the boundary adjustment? So then the lot boundary adjustment, State v. Crispin says this, excuse me, Crispin v. Seattle says this, and it's cited in our brief. It says that if you take a parcel and adjust it from a triangular to a rectangular in this case, even if you make it buildable, and I'm not conceding that it wasn't buildable in a triangular shape, it would have been an odd looking house, but it would have been buildable. An igloo or something? An igloo. You look around this town and there's some pretty odd looking houses on some pretty small lots. But Crispin v. Seattle says the fact that you make it buildable does not strip that LBA or lot boundary adjustment, strip it from its exemption under the State Subdivision Act. And that's, again, a State Supreme Court decision. So the fact that this LBA shifted a lot from triangular to rectangular and made it more buildable, it's still exempt from the State Subdivision Act and is not the creation of a new lot. That's not the law, Your Honor. So how would a home, how would a You can create a remedy, but let's just say if you had 15 minutes from the decision to file under LUPA, would that be really giving someone an avenue? 21 days isn't very long. It's longer than 15 minutes, but I'm just wondering, what is this? It seems that it's illusory. I don't think it's illusory at all, Your Honor, because what the city did is it provided general notice to the public because it put all three of these decisions in its online administrative record. So that's one form of notice. I want to also add to that that our Supreme Court in multiple objective of the legislature to have finality in land use decisions, and that in some instances, you will end up with results where people, the only notice was a generalized notice, not individualized as these neighbors want. But notwithstanding that, when the LUPA 21 day clock clicks off, that's the end of it. Well, tell me the parade of horribles if we created a property right here. I'm just talking hypothetically. Just because something doesn't seem fair doesn't mean you create a property right, but just tell me the parade of horribles here. Why couldn't it be cabined to this particular situation? Tell me what it would mean. Well, what it means is that the city of Seattle alone issues probably over 10,000 administrative permits a year. And that's going to be a small fraction of the administrative permits that are issued in the Ninth Circuit. And what that is going to mean is that there's going to be a tremendous financial and administrative burden. There will be significant delays in all of these permits, building permits, lot boundary adjustments throughout the Ninth Circuit. That's the parade of horribles, Your Honor. Plus, our Supreme Court has- Well, I'm concerned about the constitution too. The constitution may not care about those parade of horribles, but I'm just... Well, from a constitutional perspective, if you call this a cause of action, a property right, I don't know where you're going to stop from there. I mean, the one case I can think of is that court was dealing with is marriage and the right to dissolve a marriage. That's a darn fundamental aspect of human existence. If you say all building permits, all lot boundary adjustments, or the causes of action that would challenge those, I don't know where the boundaries are and where you stop. I can't foresee that. Well, if the due process that had to be that's... I guess you might have more loop of challenges, but when you create a possible challenge, can you say, well, I really created it, but I don't want anyone to use it? Well, I just want to go back to the parade of horribles. The courts have circumscribed pretty narrowly where they're going to say you have a right and a cause of action. That's what they're asking here, that loop itself is a cause of action. Therefore, we get notice. But you open that gate, your honors, I don't see where you stop it. But opposing counsel said the Supreme Court opened the gate in Logan by saying that a cause of action is a property right. What's your response to that position? Well, Logan, that statute was a four cause employment termination statute. It created both procedure and the substantive right. You have to contrast that with FUSCO. And FUSCO is just right on point, your honors. It's a land use appeal statute that has all the hallmarks that LUPA does. And so if we're going to point to some law that should control in this context, I respectfully request that it's FUSCO and not Logan, because there's nothing in there that's a four cause standard. What LUPA does, it says you're going to file this paperwork, you're going to put this stuff in the record, we're going to have a hearing, and then the judge may remand, approve, or deny the decision. Same structure as in the statutory Connecticut land use appeal statute. So again, if we're going to point to something, your honors, it's not Logan, it's FUSCO. I would like to wrap up, if I may, your honor. In conclusion, this court should reject the plaintiff's request to constitutionalize administrative notice. They failed to demonstrate that they have a protected property interest in LUPA, the State Subdivision Act, excuse me, or the SF 5000 zoning. And they can't point to a single requirement in state statute or in our municipal code that would say that they're entitled to notice. It's quite the opposite. Under state statute and our own municipal code, they're not entitled to notice. And none of the cases that the plaintiff's cite to should lead to the result where every administrative permit in the Ninth Circuit, and that's where it would have to end up, is subject to notice. And I guess I'll wrap up with, I think this, I respectfully request that this court uphold the district court's decision. Thank you. All right. Thank you, counsel. Will Harry Buttle. I'll be very brief. The first point counsel made that because they give no notice, no notice is due. I think the answer to that is in the Cleveland Board of Education versus Luther Mill. The Supreme Court has said unequivocally, unequivocally, that the property cannot be defined by the procedures designed for its deprivation. I think that answers that question. Now, the second point, counsel says that it's an administrative decision. And he uses the word administrative as this big blanket that covers everything. Well, that's not the case. The label doesn't matter. What matters under Harris, which is the leading case in the Ninth Circuit, is not the label, but the nature of the action. The court needs to look at the action and see what kind of decision are we talking about here. And if it is an adjudicative decision that exceptionally affects a small group of people, then property rights are triggered. That is the hallmark of property in the Ninth Circuit. And interestingly, the U.S. Supreme Court in a very recent case of Kerry versus Dinn, there's a four-person, four-justice decision authored by Justice Breyer, where he uses the same definition. So I think this is where the law is now on what is the kind of decision that triggers due process. It has to be adjudicative, and it has to have standards, which we do. And it also has to affect a small group of people in an exceptional way. There's no question everybody here is within 100 feet. They're Durland. Durland is a state Supreme Court case. Its decision about what federal due process means is not binding on this Court. But property interests are determined by state law. The Constitution does not adjudicate or bestow property interests. We look to state law to determine whether or not there is a property interest. So if the Washington Supreme Court tells us that there is no property interest, then that's what we have to look to in applying the Constitution. Well, Washington State Supreme Court can interpret Washington law to decide what is property and what is not property. But the question whether federal law considers something, a property interest that's worthy of due process protection, is absolutely a question of federal law. What case says that whether or not there is a property interest is determined by federal law as opposed to state law? Correct. It's Memphis Light, a U.S. Supreme Court case, and also Castle Rock. And Castle Rock is very clear on this point that federal courts do not defer to state courts about what is and what is not a process that is constitutionally acceptable. The process, is constitutionally, is a federal question. But whether or not there is a property right is a matter of state law. The Constitution does not bestow property rights. That's correct. The state law begins the analysis. It doesn't end the analysis. And look, for example, at Logan. In Logan, Illinois Supreme Court said there's no property right here. And U.S. Supreme Court said yes, there is. In Memphis Light, it says although the underlying substantive interest is created by an independent source such as state law. Yes. Federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the due process. So Memphis Light said state law determines the extent of the property interest. And then federal law determines whether or not the constitutional due process has been met to protect that interest. That's correct. Then we agree. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by
judges: Gilman, Rawlinson, Callahan